CITY OF AUBURN v. ETHER S. PAUL.

Androscoggin.   Opinion December 30, 1912.

*Appeal.   Arbitration.   Assessment.   Benefits.   Board of Public Works.
Commission.   Contract.   Hearing.   Interests.   Jurisdiction.   Munici-
pal officers.   Private and Special laws of 1905, Chapter
137.   Petition.   Sewers.   Taxes.   Taxpayers.*

An action of debt to recover under Section 10 of Chapter 21 of the Revised
Statutes, $1680, being the amount of an assessment made upon the defend-
ant's land on Lake and Shepley streets and Gamage avenue in the city of
Auburn, for the benefits received to said land by reason of the construction
of a sewer through said streets.   The assessment in question was made by
the Board of Public Works of the city of Auburn, consisting of the mayor,
a member ex-officio, and five citizens of Auburn chosen by the city council
under the provisions of Private and Special Laws of 1903, Chapter 137,
as amended by Private and Special Laws of 1905, Chapter 109.
The defendant questions the validity of the statute governing and regulating
assessments for construction of sewers, as provided by Chapter 21 of the
Revised Statutes.
*Held:*
1.   That it was the intention of the Legislature by Section 6 of Chapter 21
of the Revised Statutes to provide a tribunal before which a party assessed
for construction of a sewer, might have determined by proceedings in the
nature of an appeal, the amount that should be assessed for the expense
of the construction of the sewer by reason of the benefit to his land, which
tribunal should act judicially in determining the amount of assessment.
2.   That when a Statute merely imposes a tax for benefits like the act in
question, involving no question arising under the exercises of eminent
domain, no appeal to a jury need be provided.
3.   Section 6 of said statute gives a party agrieved the right to have the
amount of his assessment determined by arbitration, and the right to a
hearing before a disinterested court or board, according to the rules of
law and the procedure of our courts.
4.   That the Legislature, by providing that the board of arbitration to fix
the assessment should be citizens of the town in which the sewer was con-
structed, considered that the interest of the general taxpayer of the town
was too minute or remote to warp or influence their judgment and that the
disqualification by reason of that interest was removed by said act.

5. No express authority is given the Board of Public Works by the act creating said Board to estimate the benefits and make the assessment, and the grant of the power of taxation is not implied in said act nor incident to the powers expressly granted said board.

On report. Judgment for defendant.

This is an action of debt in which the plaintiff seeks to recover the sum of $1680 under the provisions of Revised Statutes, Chapter 21, section 10, being an assessment levied upon the defendant's land on Lake and Shepley streets and Gamage avenue in the city of Auburn for benefits received to said land because of the construction of a sewer through said streets. This assessment was made by the Board of Public Works of the city of Auburn, consisting of the mayor, a member ex-officio and five citizens of Auburn chosen by the city council under the provisions of Private and Special Laws of 1903, Chapter 137, as amended by Private and Special Laws of 1905, Chapter 109. This petition was signed by five of the six members of the Board of Public Works, who later made the assessment in question. Plea, general issue with brief statement. At the conclusion of the evidence, the case was reported to the Law Court by agreement of parties for determination; the Law Court, upon so much of the evidence as is legally admissible, to render such judgment as the law and the evidence require.

The case is stated in the opinion.

*Seth May,* city solicitor, for plaintiff.

*John A. Morrill,* for defendant.

SITTING: SPEAR, CORNISH, KING, BIRD, HALEY, HANSON, JJ.

HALEY, J. This is an action of debt brought by the city of Auburn under the provisions of Chapter 21, Section 10, of the Revised Statutes of Maine, to recover the sum of $1680, the amount of an assessment levied upon the defendant's land on Lake and Shepley streets and Gamage avenue, in said city, for the benefits received by said land by the construction of a sewer through said streets. The assessment in question was levied by the Board of Public Works of the city of Auburn, which consisted of the mayor, a member ex-officio, and five citizens of Auburn, chosen by the city

council under the provisions of the Private and Special Laws of 1903, Chapter 137, as amended by the Private and Special Laws of 1905, Chapter 109.

October 2, 1909, the Board of Public Works voted to petition the city council to locate and accept a street from Lake street to Gamage avenue, to be on the line between the land of the defendant and the Davis estate; the signers of this petition included five of the six members of the Board of Public Works, who later made the assessment in question.

July 11, 1910, the city council authorized and directed the Board of Public Works to construct the sewer in question, and made the necessary appropriation therefor. The Board of Public Works received the order from the city council, accepted the same, and authorized the mayor to contract for the building of the sewer, and the mayor, in behalf of the city, executed a contract and the sewer was constructed. On December 10, 1910, the Board of Public Works took a view of the streets in which the sewer was located, for the purpose of making the assessments upon the property benefited by the said sewer. January 4, 1911, the question of the assessments for the sewer was taken up by the Board, and it was voted to make an assessment of $35 for each fifty foot lot, and the assessments were made and filed in the city clerk's office that day, and on the same day a hearing was ordered by said Board upon the subject matter of the assessments, to be held on February 13th, and due notice thereof was given.

On February 13, 1911, the hearing was had before the Board of Public Works, and it was voted to abate of the defendant's assessment the sum of $210, leaving the assessment at $1680, and the defendant was duly notified of the above action. February 21, 1911, the defendant notified the Board that he desired the assessment to be determined by arbitration. On February 25th the Board named six citizens of Auburn, from which two members of arbitrators were to be selected by the defendant under the provisions of Chapter 21, Section 6, R. S. March 3, 1911, the defendant notified the city clerk of his selection of two of the names submitted, and March 10, 1911, the city clerk notified the defendant that one of the parties selected by him refused to serve, and the defendant

afterwards declined to make a further choice, although the city clerk offered, in behalf of the Board of Public Works, to furnish another list of names for the defendant to select from.

The defendant questions the validity of the statute governing and regulating assessments for the construction of sewers, as provided by Chapter 21, R. S.

Section 5 of Chapter 21, R. S., provides that the municipal officers, after constructing a sewer, shall determine what lots or parcels of land are benefitted by such drain or sewer, and shall estimate and assess upon such lots and parcels of land, and against the owners thereof, or the person in possession or against whom the taxes thereon shall be assessed,  .   .   .   such sum not exceeding such benefit as they deem just and equitable toward defraying the expense of constructing and completing such drain or sewer, not to exceed one-half of the cost of such drain or sewer, and also provides for the filing by them with the clerk of the town a location of such drain or sewer with a profile description of the same, and the amount assessed upon each lot or parcel, and that the clerk shall record the same, and within ten days shall notify each person so assessed, with an order of notice by the clerk, stating the time and place for hearing upon the subject matter of such assessment, and upon such hearing, said officers shall have power to revise, increase or diminish any such assessment.

Section 6 provides:

"Any person not satisfied with the amount for which he is assessed, may, within ten days after such hearing, by request in writing given to such clerk, have the assessment upon his lot or parcel of land determined by arbitration. The municipal officers shall nominate six persons who are residents of said town, two of whom selected by the applicant, with a third resident person selected by said two persons, shall fix the sum to be paid by him, and the report of such referees made to the clerk of said town, and recorded by him, shall be final and binding upon all parties. .   .   ."

It was the evident intent of the Legislature, by Section 6, to provide a tribunal, before which a party assessed for the construction of a sewer might have determined, by proceedings in the nature

of an appeal, the amount that he should be assessed for the expense of the construction of the sewer, by reason of the benefit received by his land, which tribunal should act judicially in determining the amount of his assessment.

The power of the Legislature to authorize the assessment of a tax upon the owners of land whose property is benefited by a sewer, according to the benefit received, as in this case, is not questioned, the statute authorizing such assessment having been before this court in a suit between the same parties to recover an assessment for the construction of a sewer, *Auburn* v. *Paul,* 84 Maine, 212, in which that question was raised and decided, and the same principle as applied to the widening of a street was sustained in *Bangor* v. *Pierce,* 106 Maine, 527; but the position now urged by the defendant against the validity of the assessment was not presented to the court, nor passed upon, in *Auburn* v. *Paul,* supra.

The assessment having been made, under the taxing power of the Legislature, by the Board of Public Works, who, if they were authorized to make it, were, in the assessment thereof, acting as agents of the State, and having complied with the statute by fixing a time and place for a hearing before the Board of Public Works, when the parties assessed to pay a part of the cost of the construction of the sewer could be heard upon the assessment made, due notice thereof having been given, that hearing had, and its doings recorded, the proceedings were according to the statute, R. S., Chapter 21, Section 5, and the validity of the assessment must be judged and determined by the same rules of law as those by which other assessments are judged and determined.

It is objected that Section 6 of Chapter 21, R. S., providing for arbitration to fix the amount of the assessments, is invalid, as, by Section 6, the owner of the land is not given the right of appeal that he is entitled to by law, but in *Auburn* v. *Paul,* supra, the court said: "And when the statute merely imposes a tax for benefits, like the act now considered, involving no question arising under the exercise of eminent domain, no appeal to a jury need be provided," citing *Howe* v. *Cambridge,* 114 Mass., 388; *Chapin* v. *Worcester,* 124 Mass., 464. In the above cases the parties taxed urged that they were entitled to an appeal to a jury, which explains why

the court said, "to a jury." It would have been more accurate to have said, "No appeal need be provided." The assessment in question is the same as any tax assessed by the Legislature, within its constitutional limits, the exercise of the sovereign power, from which no appeal lies, except when given by statute. Upon the separation of Maine from Massachusetts, the Legislature of this State enacted a law giving parties aggrieved by the assessment of taxes by the assessors of the cities and towns the right of appeal from the assessment. Public Laws of 1821, Chap. 116, Sec. 13. The same right existed by statute in Massachusetts before the separation, and has existed in this State ever since the act of separation; but without a statute giving the right there could be no appeal from the assessment of taxes by the assessors of the cities and towns. An appeal from the assessment of taxes is a privilege, not a constitutional right, and can only be granted by the sovereign power; that alone has the power to impose the tax.

Section 6, by giving a party aggrieved the *right* to have the amount of his assessment determined by arbitration, gave him a right to a hearing before a disinterested court or board, according to the rules of law and the procedure of our courts. It does not mean a hearing before an interested court or board.

It is urged that Section 6, giving to a party aggrieved the right to have his assessment determined by arbitration, has not provided a disinterested board to fix the amount of the assessment, but that the board of arbitration that the statute provides to finally fix the amount, is an interested board, and therefore incompetent to judicially determine the benefits received by the various lots of land, and the amount of the assessments therefor, and the objection is urged because the board provided for by Section 6 must all be citizens of the town in which the sewer is constructed, and that, as citizens, they would be interested to assess the benefits to the full amount allowed by statute, that the burden to their town by reason of the construction of the sewer might be lessened. So zealous is the law in protecting its tribunals from even the suspicion that their judgments are influenced by any interest except the merits of the cause, that it was held, in *Commonwealth* v. *McLane,* 4 Gray, 427, that a recognizance, entered into before a justice of the peace resid-

ing in the town in which any forfeiture incurred under the recognizance, was given by statute, was void, if there was no statute expressly removing his disqualification by reason of such interests, if there was any other magistrate in the county before whom the recognizance could be taken.   Lord Coke declared, while sitting judicially, that even an act of Parliament, made against natural equity, as to make a man a judge in his own case, is void in itself, "for jura naturae sunt immutabilia, and they are leges legnum," cited in *State* v. *Crane,* 36 N. J. L., 400.   The maxim that no man can be judge in his own case is said to have had its origin in the fundamental nature of law; but while a law enacted by the Legislature giving a party power to act as judge in his own case is undoubtedly void, it does not follow that any interest, however small, is a disqualifying interest that cannot be removed; if the Legislature did not have that power, as said in *State* v. *Intoxicating Liquors,* 54 Maine, 564, "This argument, if carried out to its logical results, would prevent the imposition of any fine to and for the use of the State, by any magistrate in it, whether a justice of the peace or a judge of the Supreme Court.   For all are citizens of the State and pay taxes, and have an interest in having a treasury supplied by penalties and fines,—in the same manner as the Judge of the police court of a city has in replenishing the city treasury by like means.   It has been contended that, when the Legislature has, in express terms, given jurisdiction in cases where the magistrate might have a minute and remote interest, without in terms, or by implication, except as in such case,—the fair construction is, that jurisdiction is given notwithstanding such interest, and although there may be other courts of concurrent jurisdiction,   .   .   .
the limit and extent of the provision is within legislative discretion and determination."   The court then quote Chief Justice Shaw in *Commonwealth* v. *Emery,* 11 Cush., 411, as follows:   "We may go further and add, that, it being quite competent for the Legislature to provide, as they have in many cases, that such a municipal minute interest, shall not disqualify a judge, juror, or appraiser or other similar officer, when jurisdiction is given to a magistrate, who, by force of the same act, may have some remote municipal interest, it was their intention to remove such disqualification."

In the case of *State* v. *Crane,* supra, the court, in discussing the interest that would disqualify a party from acting judicially, after stating that the interest objected to in that case was that one of the commissioners to assess the damages for the laying out of the way was an owner of land over which the way passed, said: "This interest is different from that of a general taxpayer which, in some cases, from the necessity of things, might be disregarded, or if not so, could be relieved against by the Legislature,   .   .   .   That it may be done when the interest is only as a general taxpayer I think is clear.   .   .   .   It may, therefore, be considered as settled that disqualification for such interests as are common to all taxpayers may be removed by the Legislature." The Legislature has removed the interest of a justice or a judge in suits in which the county or town in which he resides are parties if the adverse party to such town or county enters on the docket a waiver of their interest, R. S., Chap. 84, Sec. 50, also the interest of trial justices, judges of municipal and police courts, in suits for taxes, R. S., Chap. 10, Sec. 27, and also interest of jurors in prosecutions for the recovery of money, or other forfeitures, when they are liable to pay taxes in the county, town or plantation, which may be benefited by the recovery.   R. S., Chap. 84, Sec. 101.

We think that the Legislature, by providing that the board of arbitration to fix the assessment should be citizens of the town in which the sewer was constructed, considered that the interest of the general taxpayer of the town was too minute or remote to warp or influence their judgment, and that the disqualification by reason of that interest was removed by the act. *State* v. *Bangor & Brewer,* 98 Maine, 114.

Of course if the interest of any of the parties named as arbiters was more than the interest of the general taxpayer, that interest would not be removed, and they would not be competent to act. In other words, it is the duty of the town to name six citizens of the town, who are not interested in the benefits or assessments other than as general taxpayers, to act as arbiters, and a board selected as provided by Section 6 is a competent and disinterested board to act judicially in determining the amount of the assessment for the construction of sewers.

It also urged that Sections 5, and 6 are invalid because they prescribe no rule or standard of assessment; and it has been held that acts authorizing the assessment for local improvements upon designated property must determine the mode of distributing the burden; that the property out of which the tax is to be made must be designated, and the standard of assessment established, and can not be left to the discretion of others, and assessments like the one under discussion, where the officers making them were authorized to assess in such proportions as they deemed just and equitable, have been held invalid.    But statutes authorizing assessments according to the benefits conferred upon the property assessed, are not subject to the objection, because the property to be assessed is designated, and the standard of assessment is fixed. The burden is to be borne by the property benefited, according to the benefits received.

So much of Section 5 as is material upon this branch of the case is as follows:

"When any town has constructed and completed a public drain or sewer, the municipal officers shall determine what lots, or parcels of land are benefited by such drain or sewer, and shall estimate and assess upon such lots and parcels of land    .    .    .    such sum not exceeding such benefit as they may deem just and equitable, toward defraying the expenses of constructing and completing such drain or sewer, the whole of such assessments not to exceed one-half of the cost of such drain or sewer."    .    .    .

We think that this statute should be construed to mean, that the municipal officers shall determine what land, or parcels of land, are benefited by the sewer or drain, and that they shall assess upon such lots or parcels, according to the benefits received by such lots or parcels, such sums as they deem just and equitable, that is, equitable and proportionate; that the fair implication of the language is that the assessments are to be according to the benefits received by the lots or parcels, as compared with the benefits received by the other lots or parcels. It is not claimed that the assessments in question were not made according to the benefits received, but only that the statute does not prescribe how they shall be made, and does not specify that they shall be made according to the benefits received. But, as before stated, the fair implication of the statute is, that the

assessments are to be made according to the benefits received by the land assessed, and the statute is not invalid for the reason urged.

It is also objected that the Board of Public Works had no authority to make the assessment in question, that that duty was placed by statute upon the municipal officers of the city, and that, as the municipal officers did not make the assessment in question, no valid assessment has been made. The act creating the Board of Public Works, Chapter 137 of the Private and Special Laws of 1903, provided that said board were to have and exercise, "all the powers and be charged with all the duties relating to the construction, maintenance, and care of the streets, highways, bridges, sidewalks, drains and sewers in said city, which are now conferred or imposed upon the city council, municipal officers and commissioners of streets by the charter and ordinances of the city and the general law of the state."

This act took from the city certain of its powers and duties, among others, some relating to sewers and drains, and imposed those powers and duties upon the Board of Public Works. By Section 2, Chapter 21, R. S., the municipal officers of a town, or a committee duly chosen by the town, may construct public drains or sewers. By the law of 1905 that power was taken from the city of Auburn, and imposed upon the Board of Public Works. By Section 5, Chapter 21, R. S., it is provided that, "all drains or sewers shall forever thereafter be maintained and kept in repair by such town." The city of Auburn, by the law of 1905, had that duty taken from it, and it was imposed upon the Board of Public Works. The only powers and duties taken from the city government, as far as drains and sewers are concerned, and imposed upon the Board of Public Works, in express terms, are the construction, maintenance, care and control. The Board of Public Works could not construct the sewer, until authorized by the city council and an appropriation made therefor. Section 5, Chapter 21, R. S., provides that whenever any town has constructed and completed a public drain or common sewer, the muncipal officers shall determine what lots or parcels of land are benefited by such drain or sewer, and shall estimate and assess such sum, not exceeding such benefits, as they may deem just and equitable toward

defraying the cost of constructing and completing such drain or sewer. Was this duty and power taken from the municiapl officers by the act creating the Board of Public Works and imposed upon that board? If it was, it was so taken by the law of 1905 creating the board, as no amendment granting that power has since been enacted by the Legislature, and it must be determined by a construction of the act creating the board. The rule of construction as stated in Endlich on the Interpretation of Statutes, Section 352, is as follows: "The powers that are given to subordinate local authorities are strictly construed, and every reasonable doubt as to the existence of a particular power resolved against the same, and consequently of two possible constructions that has to be adopted, which is based upon the theory that the Legislature intended to delegate only such powers as were necessary to carry out the objects of the enactment, and not any larger powers than were necessary for that purpose. Hence, too, statutes delegating to municipal and other inferior authorities the power of imposing taxation must be in clear and unambiguous terms, and are subject to the rule of strict construction." Cyc., Vol. 37, page 725, after stating that the Legislature cannot delegate its power of taxation, states the exception as to municipal corporations, as far as necessary for their own purposes and in respect to property within their jurisdiction, and then states: "But, even in this case, the power must be expressly and distinctly granted." In *Wandworth Board of Public Works* v. *Telephone Co.,* L. R., 13, Q. D., 904, Bowen L. J., in discussing what powers were conferred upon the board, said: "The Board of Works have what the Metropolis Management Act, 1855, has given to them; they have no more, and no less.  .   .   . It is wise to adopt such a construction, as is based upon the assumption that Parliament merely intended to give so much power as was necessary for carrying out the objects of the act, and not give any unnecessary power."

In *Paine* v. *Spartley,* 5 Kan., 526, in discussing the powers of the city to assess taxes, the court said: "Such corporations possess and may exercise those powers which are granted in express terms; also those necessarily implied or necessarily incident to the powers expressly granted; and, lastly, those which are absolutely indis-

pensable to the declared objects and purposes of the corporation. In this connection it may also be stated that it is regarded as a settled principle of law that wherever there is a fair and a reasonable doubt as to the existence of a power in such corporations, the courts will not uphold or enforce its execution."

As shown above, there was no express authority given to the Board of Public Works to estimate the benefits and make the assessments. Their powers and duties were to have and exercise all the powers, and be charged with all the duties relating to the construction, maintenance, care and control of drains and sewers. Is the grant of the power of taxation necessarily implied, or necessarily incident to the power expressly granted said board? We do not think it is. The Board of Public Works do not need the power of taxation to construct, maintain and keep in repair sewers. By the law of the State sewers can only be constructed after an appropriation for that purpose has been made by the town, which in this case was done by the city council, who alone had the power to appropriate the money for that purpose. Under the act creating them they could only expend for drains and sewers the money appropriated for that purpose. Therefore, they did not need the power to assess the owners of the land benefited to enable them to perform the duties imposed by the act creating the board. Section 7, Chapter 109, of the Private and Special Laws of 1905, provides that all of the bills of said board shall be paid from the city treasury. The power of taxation is not indispensable to the declared object and purpose for which said board was created, and as the Legislature has not granted to the Board of Public Works the power of taxation, i. e., the power to assess land and the owners for the benefits received by the sewer, there has been no valid assessment, therefore this action cannot be maintained.

*Judgment for defendant.*