18 N.J. Super. 411 (1952)
87 A.2d 454
SAMUEL YANOW, RESHELA YANOW, ABRAHAM G. HOROWITZ AND RUTH S. HOROWITZ, PLAINTIFFS,
v.
SEVEN OAKS PARK, INC., A NEW JERSEY CORPORATION, MAX MASIN, MORRIS TZESES, SEYMOUR MASIN, LEO MASIN. LEO TZESES, ARTHUR TZESES AND MILTON ALBERT, DEFENDANTS, AND EASTERN CHRISTIAN INSTITUTE, INTERVENING DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 14, 1952.
*412 Mr. Emanuel N. Silberner, attorney for plaintiffs.
Messrs. Kristeller & Zucker (Mr. Saul J. Zucker appearing), attorneys for all the defendants other than Eastern Christian Institute.
Messrs. McGlynn, Weintraub & Stein (Mr. Edward R. McGlynn appearing), attorneys for intervening defendant Eastern Christian Institute.
Mr. Edmond J. Dwyer, attorney for intervening defendant and cross-claimant City of Orange.
STEIN, J.S.C.
The factual controversy here present was narrated with considerable detail in the court's earlier opinion *413 when the defendants' motions for summary judgment were denied and the City of Orange was permitted to intervene. 15 N.J. Super. 73, 83 A.2d 28. After that opinion was filed the City of Orange, as intervenor, filed its answer in aid of the relief sought by the plaintiffs and set up the provisions of the building zone ordinance of the City of Orange, of which subsection 9 of section 2 reads as follows:
"(9) Private schools, clubs, lodges, social community center and recreation buildings, are prohibited, unless the written consents of 80 per cent., by frontage, of the owners of all lots within 200 feet of the property in question be filed with the Building and Plumbing Inspector, and unless every application for the erection, enlargement or alteration of any such building shall be approved by the Board of Appeals."
In its third separate defense the intervening municipality alleges that the defendants, as well as the Eastern Christian Institute, failed to secure the written consents of 80 per cent, by frontage, of the owners of all lots within 200 feet of the lands and premises involved in the controversy. By way of cross-claim the City of Orange seeks a judgment against all the defendants, including the Eastern Christian Institute, enjoining and restraining them from using or permitting the use of the Colgate house for any purpose other than that of a one-family residence. It is undisputed that the intended use of the Colgate mansion was for classrooms and dormitory for students of the Institute.
The action proceeded to trial before me on February 13, 1952, and at the conclusion of the submission of the proofs I announced orally that insofar as the plaintiffs' case was based upon alleged representations made to the plaintiffs orally by their vendors, the action was not maintainable in point of fact or law. I announced the court's finding that the alleged representations were not made in fact. I further announced my conclusion of law that such representations, affecting the title to land, were in conflict with our statute of frauds and were for that reason unenforceable. However, there was reserved for consideration the matter pressed by the *414 City of Orange, namely, that the proposed use of the Colgate mansion was violative of the local ordinance and should be restrained. I had already indicated in my earlier filed opinion that the remedy of injunction was available to the municipality, as well as to the individual property owners affected by any violation, as one of the means of enforcing the provisions of the zoning ordinance. As against the claim made and position taken by the City of Orange there was strongly urged the argument that the zoning provision in question was unenforceable, in that it constituted an invalid delegation of the police power residing in the municipality and that it was invalid in other respects. The point was made that under the zoning provision before the court public schools are not barred but only private schools are excluded, unless such private schools are consented to by eighty per cent, "by frontage, of the owners of all lots within two hundred feet of the property in question." It is plain that the excluding effect of the ordinance is in its ultimate force made to rest not upon the sole and independent legislative judgment and power of the governing body, but upon the action of the property owners within the stated distance from the property involved in the dispute. If eighty per cent of such property owners wish to permit the erection of a private school and file their written consents with the building and plumbing inspector, then the interdiction of the ordinance vanishes and the excluded use becomes lawful. If such action is not taken by such property owners, then the ban of the ordinance persists. In short, not the governing body but a percentage of the property owners within the two hundred foot range constitutes the final enacting authority. This is palpably an attempted delegation of a legislative power vested in the municipality and not transferable to the individual citizen or property owner. It should also be observed that the ordinance provision, even if otherwise unobjectionable, lacks legal vitality for the reason that no standards are fixed for the exercise by the individual property owners of the power attempted to be delegated to them. There is nothing in the ordinance that defines the boundaries *415 of that power or furnishes a guide for its exercise. The property owners' consent may be given or withheld capriciously and without the slightest regard for the health, safety or welfare of the public. Then, too, nothing was laid before me to justify the very startling discrimination made between the private and the public school. If the one merits exclusion from a private residence zone, why not the other? Not a single fact was laid before me to support and justify the effect of the ordinance in excluding the private school and admitting the public school. Congestion can hardly be the answer, for experience suggests that all other things being equal, the private school is more likely to command a lower attendance of students. All these considerations lead me to the conclusion that the particular provision of the ordinance here in question is not alone unconstitutional because of the unlawful delegation of power and also because of the denial of due process, but is also invalid because it is unreasonably discriminatory.
The questions here involved are not novel. They were before the New York Court of Appeals in the very recent case of Concordia Collegiate Institute v. Miller, 301 N.Y. 189, 93 N.E.2d 632 (decided in 1950). There the court considered a municipal zoning ordinance which barred private school structures from residential zones unless eighty per cent of the adjoining property owners consented. The plaintiff was a private preparatory school and junior college and applied for a building permit for a school building in a residential area. The Court of Appeals adjudged the ordinance to be void as violating the due process of law requirement. In that case the court said:
"Petitioner, however, challenges the constitutionality of the zoning amendment * * * insofar as it affects petitioner, upon the ground that it is arbitrary, unreasonable and confiscatory and violates the Fourteenth Amendment of the Constitution of the United States and section 6 of article I of our State Constitution. It contends (1) that the provision requiring consents from 80% of the adjoining owners, before the board of appeals is even empowered to consider an application, imposes a restriction on an inoffensive and legitimate use of property, not by a legislative body but by other property *416 owners, and that such delegation of power is repugnant to the due process clause; (2) that, even if such consents were obtained, the amendment would be bad, since the board of appeals is given no standards or guides to exercise its discretion as to what `educational, religious or eleemosynary purposes' may be permitted, and (3) that the ordinance as amended discriminates between public and private schools, and virtually bars schools as well as churches from the village.
We are of the opinion that the 1941 amendment of the zoning ordinance is invalid. According to its provisions, it withdrew the unrestricted permission granted under the original ordinance to use property in a residence district for educational purposes, but authorized the board of appeals to grant such permission `provided the petitioner files the consents duly acknowledged of 80% of the owners of property fronting on the streets enclosing the block within which lies the property intended for such use.' Without such consents, the board of appeals had absolutely no power under said subdivision (f). A fraction over 20% of the adjoining property owners could prevent any action by the board and they could thus finally determine, even by inaction, the kind of use that petitioner might make of its property. Against that restriction not only petitioner but the board itself would be powerless. The action of such dissenting or indifferent owners is subject to no guides or standards and to no rule whatsoever.
In Eubank v. City of Richmond, 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156, Ann. Cas. 1914B, 192, where a statute required the `committee on streets' upon request of the owners of two thirds of the abutting property to establish a building line, the court said, 226 U.S. at pp. 143-144, 33 S.Ct., at page 77: `One set of owners determines not only the extent of use but the kind of use which another set of owners may make of their property. In what way is the public safety, convenience, or welfare served by conferring such power? The statute and ordinance, while conferring the power on some property holders to virtually control and dispose of the property rights of others, creates no standard by which the power thus given is to be exercised; in other words, the property holders who desire and have the authority to establish the line may do so solely for their own interest, or even capriciously.' See also Carter v. Carter Coal Co., 298 U.S. 238, 311, 56 S.Ct. 855, 80 L.Ed. 1060. * * *
In the case now before us, we are not dealing with billboards or garages or other offensive uses in connection with which consent provisions may be proper, but with an educational use which is clearly in furtherance of the health, safety, morals and general welfare of the community, and is under the direct supervision, care and concern of the State itself. Zoning ordinances must find their justification in the police power exercised in the interest of the public. Village of Euclid v. Amber Realty Co., 272 U.S. 365, 387, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016. `The governmental power to *417 interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and other questions aside, such restrictions cannot be imposed if it does not bear a substantial relation to the public health, safety, morals or general welfare.' Nectro [Nectow] v. City of Cambridge, 277 U.S. 183. * * * It [the legislature] recognized an educational use as harmonious with the public interest  and who indeed could consider it otherwise. * * *
Moreover, even though 80% of the adjoining property owners consented, the board of appeals in the instant case was given no standards or guides to exercise its discretion as to what `educational, religious or eleemosynary purposes' may be permitted * * * to it is committed an unfettered and unrestricted descretion to approve or reject proposed educational uses. It has been repeatedly held that this may not be done."
See also Washington, ex rel. Seattle Title Trust Co. v. Roberage, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210, 86 A.L.R. 654 (1928); Spies v. Board of Appeals, 337 Ill. 507, 169 N.E. 220 (Sup. Ct. 1929).
Section 2(a) (9) of the building zone ordinance of the City of Orange is for the reasons above stated declared to be unconstitutional and unenforceable. Neither the City of Orange nor any of the plaintiffs herein may support or enforce any rights thereunder. Judgment will be entered against the plaintiffs and the intervening defendant, the City of Orange, and in favor of all the defendants, including the Institute. There will be no costs against the City of Orange. Present form of judgment disposing of all claims and cross-claims in accordance with these conclusions.