143 N.J. Super. 168 (1976)
362 A.2d 1221
AMELIA ARABIA, ON BEHALF OF HERSELF AND ALL OTHER MEMBERS OF THE CLASS SIMILARLY SITUATED, PLAINTIFFS,
v.
SIMON ZISMAN ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 21, 1976.
*169 Mr. Morgan E. Thomas for plaintiffs.
Mr. Gerald Weinstein for defendant Simon Zisman (Messrs. Horn, Weinstein & Kaplan, attorneys).
Mr. Murray Fredericks for defendant City of Atlantic City.
*170 Mr. Henry P. Megargee, Jr. for defendants Children's Seashore House, The Mutual Life Insurance Company of New York, Prudential Insurance Company of America, Sawyn Corp., and Leeds & Lipincott (Messrs. Lloyd, Megargee, Steedle & Connor, attorneys).
Mr. Robert Neustadter for defendants M. Neustadter, Steel Pier & Albert Toll (Messrs. Cooper, Perskie, Neustadter & Katzman, attorneys).
Mr. Maurice Y. Cole, Jr. for defendants Central Pier Co. & Marlborough-Blenheim Company (Messrs. Cole, Koury, Cole & Tighe, attorneys).
Mr. John R. Armstrong for defendants First National Bank of South Jersey, James Candy Company, Isidor Dion & Eva Dion, Williamson's Joint Venture & Atlantic City Realty Company (Messrs. Kirkman, Mulligan, Bell & Armstrong, attorneys).
Mr. Michael M. Land for defendants Albert & Rose Cohen (Messrs. Goldsmith, Land & Finifter, attorneys).
Mr. Max A. Baker for defendants Sidney Hartfield, Housing Authority of Atlantic City & Berkley Condominium Residences, Inc. (Messrs. Feinberg & Ginsburg, attorneys).
Mr. Daniel DeBrier for defendants Daniel DeBrier & the First National Bank of South Jersey, co-executors of the estate of Dorothy Graff Shactman (Messrs. Valore, McAllister, DeBrier, Aron & Westmoreland, attorneys).
Mr. George J. Weinroth for defendant Eva Affrime (Messrs. Greenberg, Shmerelson, Greenberg & Weinroth, attorneys).
Mr. Joseph E. Robertson for defendant Grace George.
*171 Mr. William Goddard Lashman for defendant Morris Blank (Messrs. Lashman & Kupperman, attorneys).
Mr. Frank J. Ferry for defendant Walter Thomas Smith.
Mr. David J. Weiss for defendants Abe Casel, Herman Casel & Irwin Snyder t/a Boardwalk Investors (Messrs. Vassar, Rimm, Bloom & Weiss, attorneys).
Mr. Elias Naame for defendant 3100 Boardwalk.
Mr. L. Milton Freed for defendants Estate of Emerson Richards, deceased, M.L.R. Co. and Seaside Realty Improvement.
GRUCCIO, J.S.C.
This is a class action by plaintiff class consisting of all persons who are now and for years past have been conducting the business of beach chair and beach umbrella rentals on the Atlantic City beach and boardwalk. The named defendants are all of the owners of real estate abutting the beach and boardwalk along the inland line thereof. For the past six decades plaintiffs and their predecessors have been conducting rental concessions under agreements with defendants and their predecessors whereby the former would pay the latter to waive their objections to having such concessions on the beach directly in front of their property. These agreements were made pursuant to a 1910 city ordinance allowing such objections and have continued down to the present date unchallenged in various forms and under various titles. Some parties have gone so far as to establish landlord-tenant leases whereby the concessioner rents the use of the beach from the abutting landowner. Plaintiff class seeks to have the city ordinance and past and present agreements between the parties made pursuant to it declared null and void and a return to each member of plaintiff class all fees paid under any such agreements.
The numerous motions for summary judgment were consolidated by way of an order to show cause on plaintiff's motion for partial summary judgment.
*172 The background of this case dates back to 1899 and the creation of the Atlantic City beach and boardwalk as a municipal public park. In that year the Atlantic City City Council, pursuant to an enabling statute passed by the Legislature in 1894, laid out a park comprising the beach or ocean front from Maine and Caspian Avenues to Jackson Avenue and did among other things specify and determine the inland line and authorized the city surveyor to prepare a map thereof. It further authorized the acquisition of all lands, property and rights within the limits of the park, and over the years since the city has acquired by dedication or purchase all of the beach land within the park limits except for a few small parcels not involved in this action.
On July 1, 1910 the city adopted Ordinance No. 27 which served to regulate the use of the lands lying within the bounds of the recently created public park in order that the view oceanward from the interior line of the park and from the boardwalk would remain free, open and unobstructed. The ordinance endeavors to prohibit certain uses and regulate others. It provides for written permit by the mayor for use of the beach for sand modelling (§ 3) and for the holding of religious services and secular meetings (§ 4). It provides for written permit by the street supervisor for removal of sand (§ 5) and for control of horses and ponies for hire by the committee of streets, walks and drives (§ 8). Sections 2, 7 and 9 prohibit certain other activities, and § 6, the point of contention in this action, reads as follows:
Section 6. Reclining, Observation or Beach Chairs placed upon the beach or ocean front shall be of such shape, design and construction as shall be approved by the Streets, walks and drivers Committee of the City Council and no chairs except such as may be approved by such committee shall be used within or upon said public park. Not more than one row of such chairs shall be at any time placed therein or thereon and no chairs shall at any time be placed or maintained therein or thereon immediately in front of any premises, the owner of which premises objects to the placing and maintaining of such chairs in front of his said premises. Such chairs shall be confined to one location, shall face the ocean and shall not be carried or moved from place to place and shall not be put in use *173 or occupied after 7:00 P.M. of any day. Chairs shall be in one row and shall not be used singly or with two or more together scattered or placed at different places or spots within said public park. The said committee shall have power to keep such chairs in fixed, indicated or designated lines or places and no chair shall be used outside of or any other place than that so designated or indicated. At points representing the extension of street ends open spaces shall be left for the full width of said streets and there shall be open spaces maintained not less than eight feet in width at intervals of not less than one hundred feet between street intersections. Such chairs shall not be used except between May 15th and October 15th of any year. Said chairs shall not be placed or maintained so as to cause any obstruction to the view oceanward from the interior line of said park and from the elevated Boardwalk.
Plaintiffs contend that in allowing the objection of the abutting landowner to preclude the placing of chairs on the beach in front of their premises, the ordinance effects an illegal delegation of authority by the City of Atlantic City to defendants  that it gives to these private citizens an unrestricted right that may be exercised arbitrarily, indiscriminately and capriciously to decide who shall and who shall not place beach chairs for rent or for private use on public property.
They further argue that inasmuch as the ordinance constitutes an illegal delegation of authority by the city and is therefore null and void, the agreements made pursuant thereto are likewise null and void, and that even if the ordinance is allowed to stand, the various contractual arrangements should not be. They allege that the bartering for private profit of a right created for the public good is contrary to the public policy under which that right was created. In either event plaintiffs contend that members of the plaintiff class are entitled to recover all fees or rents paid in the past to defendants under these agreements. Defendant landowners contend that the ordinance is a valid exercise of the police power and creates in them a right to object that is private in nature and therefore capable of being the subject matter of a private contract. In the alternative, they argue that if the ordinance and agreements made *174 pursuant thereto are found to be null and void, such holding should be prospective in nature, alleging various theories of estoppel, laches and unclean hands.
Since the issue of the ordinance's constitutionality disposes of the question concerning the legality of the various contractual agreements, it will be treated first.
Section 6 of Ordinance No. 27 in part reads that "no chairs shall at any time be placed or maintained therein or thereon immediately in front of any premises, the owner of which premises objects to the placing and maintaining of such chairs in front of his premises." This language is unequivocal in its intent. It allows for the preclusion of the placing or maintaining of any or all beach chairs at the sole caprice of the beach front property owner. The ordinance is not limited to the preclusion of concessions but applies to privately owned chairs as well. Further, it is totally devoid of restrictions on the power of the property owner to object. The result is that a private citizen is empowered, with this umbrella discretion, to select who may place or maintain a beach chair or beach chair concession on a public beach.
It is argued that the ordinance as a whole devises a general plan for beach use and is therefore likened to those consent zoning ordinances whose constitutionality have heretofore been upheld. See Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). However, while it is true that in certain instances property owners may be delegated the power to restrict nuisance-like activities whose potential for neighborhood harm outweighs their social utility, no such potentials exist in the placing and maintaining of beach chairs or beach chair concessions in light of the city's ability to regulate their use.
The beach is in the public domain. It is designated by law a public park. Logic and social justice dictate that the public park should be reasonably regulated by the city for the public good.
*175 This ordinance, which gives the unfettered right to upland owners to say who shall be allowed (for commercial purposes) on the beach, is patently unconstitutional. It is without reason and lacking any standards. This ordinance must fall to the enlightened breeze of logic and social justice. The public good must be protected by its guardian, the city, not by private owners who under this ordinance act without apparent reason under a delegated power which sets forth no guide, standard, rules or regulations.
I therefore hold § 6 to be invalid as an illegal delegation of the municipality's authority to private individuals. See Yanow v. Seven Oaks Park, 18 N.J. Super. 411 (Ch. Div. 1952), rev. in part, 11 N.J. 241 (1953).
I further find that the only malevolent potential that does exist in this situation inheres in the ordinance itself. The likelihood of discrimination is so great that this section of the ordinance must be declared unconstitutional on its face. See Yanow, supra, and Kohr Brothers v. Atlantic City, 104 N.J.L. 468 (Sup. Ct. 1928).
The next issue to be decided is what equitable relief, if any, should be granted to plaintiff class. Plaintiffs contend they are entitled to recover monies paid defendant landowners under the invalid agreements. To preclude such recovery, defendants raise the equitable defenses of unclean hands, in pari delicto, equitable estoppel and laches.
13 Williston, Contracts (3 ed. 1970), § 1588 at 567, reads, "A bond executed in conformity with a statute thereafter held to be unconstitutional as executed under mistake of law, * * * any relief from it must be based on mistake of law."
The aforementioned type situation is analogous to our fact situation. Under our facts a contract instead of a bond was executed in reliance upon § 6 of the city ordinance which has herein been declared unconstitutional. It therefore follows that the contracts entered into in this case were executed under a mistake of law and any relief available to plaintiffs must be based upon a mistake of law. Therefore it *176 must be determined whether there is any relief available to plaintiffs upon a mistake of law. In Freichnecht v. Meyer, 39 N.J. Eq. 551 (E. & A. 1885), Justice Dixon stated:
No doubt the general rule, both at law and equity, is "ignorantia juris hand excusat," as the courts of this state have repeatedly declared. Garwood v. Eldridge, 1 Gr. Ch. 145; Bentley v. Whittemore, 3 C.E. Gr. 366; Hampton v. Nicholson, 8 C.E. Gr. 423; Hayes v. Stiger, 2 Stew. Eq. 196. The rule, however, has not been considered universal and inflexible. Thus in Champlin v. Laytin, 6 Paige 189, 195, Vice-Chancellor M'Coun said: "As a general rule, this court does not relieve upon the ground of a mistake in matters of law, because every man is presumed to have a knowledge of the law. * * * Yet there are cases in which this court will interfere upon the ground of such mistake. * * * As, for instance, * * * if both parties should be ignorant of a matter of law, and should enter into a contract for a particular object, and the result according to law should be different from what they mutually intended, there, on account of the surprise or immediate result of the mistake of both, there can be no reason why the court should not interfere to prevent the enforcement of the contract and to relieve from the unexpected consequences of it. To refuse would be to permit one party to take an unconscientious and inequitable advantage of the other, and to derive a benefit from a contract which neither of them ever intended it should produce." On this principle he based his decree. [at 558-559]
Justice Dixon then stated the rule to be followed:
That whenever the mistake of law is mutual, and the party jeopardized thereby can be relieved without substantial injustice to the other side, there equity will afford redress, especially if the party to be benefited by the mistake invokes the aid of equity to put him in a position where the mistake will become advantageous to him. [at 561]
Now the type of relief to be granted plaintiffs must be determined. In doing equity this court has the power to adapt the equitable remedies to the particular circumstances of each particular case. Sears, Roebuck & Co. v. Camp, 124 N.J. Eq. 403 (E. & A. 1938); Sosanie v. Pernetti Holding Corp., 115 N.J. Super. 409, 414 (Ch. Div. 1971); State v. East Shores Inc., 131 N.J. Super. 300, 310 (Ch. Div. 1974). Granting plaintiff class the retroactive monetary *177 relief they seek would not be equitable. The following facts lead to the conclusion that it would be unjust to grant the aforementioned retroactive relief. First, during the past 65 years the agreements were entered into by the parties under the color of a valid city ordinance. Second, plaintiffs benefited under the agreements by being able to use public property for their own private profit. If anyone is entitled to retroactive monetary relief for plaintiffs' use of the public beaches, it is the public itself. The public is represented by Atlantic City, a party defendant to this action. However, the city has chosen not to assert any public claims to the monies paid defendant landowners by plaintiff.
Based upon the foregoing facts and the equitable powers of this court, I hold that the parties should be left as the court has found them and that plaintiff class is entitled to prospective relief only. This prospective relief includes the invalidation of all agreements entered under color of § 6 of the city ordinance by the parties and the cancellation of any monies currently owed defendants under said agreements. There is no injustice to defendants. The prospective relief is equitable as applied to defendants since the rights defendants contracted to plaintiff class were unlawfully delegated to defendants initially.