**Danny STRONG, etc., Plaintiff-Appellee,**

v.

**Charles N. COLLATOS, etc.,
Defendant-Appellant.**

**No. 78–1315.**

United States Court of Appeals,
First Circuit.

Argued Nov. 8, 1978.

Decided March 9, 1979.

Louis A. Rizoli, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for appellant.

Jim Hammerschmith, Northampton, Mass., for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This appeal involves the constitutionality of a Massachusetts durational residency requirement for veterans' welfare benefits. The district court held unconstitutional that portion of Massachusetts General Laws, ch. 115 § 5, which denies certain veterans' welfare benefits to residents of the Commonwealth who have not resided there for at least three years preceding their application for such benefits.[1] We affirm.

---

1. Mass.Gen.Laws ch. 115 § 5, in pertinent part, provides:

Veterans' benefits shall be paid to a veteran or dependent by the city or town wherein he resides; provided, that no benefits shall be paid to a veteran unless he has actually resided within the commonwealth continuously for three years next preceding the date of his application for such benefits, nor to any dependent of a veteran unless he has actually resided within the commonwealth continu-

ously for three years next preceding the date of his application for such benefits, nor unless the veteran of whom he is a dependent has actually resided within the commonwealth continuously for three years next preceding the date of such dependent's application for such benefits. If the veteran is deceased at the time of the defendant's application for benefits, and the veteran died while a resident of the commonwealth, the commissioner may notwithstanding the foregoing

Appellee Danny Strong served in the United States Army from November 1967, until December, 1973, when he received an honorable discharge. He resided in Vermont after his discharge until he moved to Massachusetts in August, 1974. In January, 1977, he was discharged from his job at the National Felt Company in Easthampton. The Massachusetts Department of Employment Security denied him unemployment benefits because it determined he was terminated for cause. Pending appeal of that decision, he applied for benefits under the Massachusetts Veterans' Services Program (MVSP). These were denied because he was found ineligible since he did not meet the three year durational residency requirement of Mass.Gen.Laws Anno. ch. 115 § 5. He then filed the present action on behalf of himself and all others similarly situated.[2]

The district court after certifying the suit as a class action, declared the durational residency requirement of Mass.Gen.Laws ch. 115 § 5 violated the equal protection clause of the fourteenth amendment to the United States Constitution and enjoined the officials administering the MVSP from denying otherwise eligible applicants benefits under the statute.

Mass.Gen.Laws ch. 115 § 5 is part of a comprehensive program designed to help needy veterans and their dependents.[3] The MVSP provides for public assistance payments to needy veterans and their dependents. It is administered by the individual cities and towns of the Commonwealth under the supervision of the Massachusetts Commissioner of Veterans Services. Benefits under the program are paid by the cities and towns which receive a reimbursement of 50% from the state. The residency requirement obviously creates two classes of needy veterans indistinguishable from each other except that the first is composed of veterans who have resided in Massachusetts for three years or more, and, the second, of veterans who have resided there for less than three years. Appellees claim that the denial of assistance to veterans with less than three years residence in Massachusetts constitutes an invidious discrimination which serves no compelling governmental interest and, thus, denies them equal protection of the laws. We agree.

In *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), the Supreme Court found that a durational residency requirement for welfare applicants denied "welfare aid upon which may depend the ability of the families to obtain the very means to subsist—food, shelter, and other necessities of life." *Id.* at 627, 89 S.Ct. at 1327. The Court held "But in moving from State to State or to the District of Columbia appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right unless, shown to be necessary to promote a *compelling* governmental interest, is unconstitutional." *Id.* at 634, 89 S.Ct. at 1331.

Mass.Gen.Laws ch. 115 § 5 provides for payments to veterans or their dependents "as may be necessary to afford him sufficient relief or support." "The phrase obviously includes at least 'food, shelter and necessities to a needy family.'" *Selectmen of Sterling v. Governor*, 2 Mass.App. 597,

proviso, authorize such benefits to such dependent actually residing in the commonwealth at the time of the veteran's death; provided, however, any veteran who actually resided in the commonwealth at the time of his entry into or continuance in active military or naval service of the United States and the dependents of such veteran shall be eligible for benefits without any waiting period.

2. The class consists of all present and future applicants for Massachusetts Veterans' Services who are Massachusetts residents at the time of application, but have not resided continuously in Massachusetts for three years immediately preceding their application and were not Massachusetts residents at the time of entering, or while serving in, the armed forces.

3. Other benefits include: exemptions from license fees (Mass.Gen.Laws ch. 101 § 24; ch. 175 § 167A); exemption from motor vehicle registration fees (ch. 90 § 33); preferences for certain low rent and state-aided housing projects (ch. 121B §§ 27, 32(f)); and preference in civil service hiring (ch. 31 § 23 and Act of June 24, 1976, 1976 Mass.Session Laws, ch. 200).

317 N.E.2d 209, 211 (1974), *aff'd sub nom. Board of Selectmen of Sterling v. The Governor, et al.*, 334 N.E.2d 50, 368 Mass. 814 (1975).[4]

Appellants' primary position is that the statute is part of a unique and elaborate state program of benefits to veterans reflecting a legitimate desire to reward Massachusetts citizens who have served their country in the armed forces. They urge that, since the program is a reward to a certain finite group, it is distinguishable from the *Shapiro* type of benefits which are needed for the basic necessities of life.

This argument simply does not wash. It has been stipulated that appellee, because he was single and had no dependents, was ineligible for any other program of public assistance at the time the complaint was brought. Since he had no income from January 8, 1977, until mid-July, 1977, when he obtained temporary employment through the CETA Programs, the Veterans' Services Program was appellee's only source of subsistence aid.

It is difficult to understand how these benefits are in any meaningful way distinguishable from the welfare aid involved in *Shapiro*. Nor can we conceive why veterans who have served the entire United States, including Massachusetts, are made worthier by waiting three years to become eligible for the benefits. The reward, we assume, is for serving in the armed forces, not for living in Massachusetts. A three-judge court from this circuit covered essentially the same ground in *Stevens v. Campbell*, 332 F.Supp. 102, 106 (D.C.Mass.1971):

> What we have here is an attempt by Massachusetts to prefer its own residents to those of other states upon a time basis which is entirely arbitrary, and which at most could be said to have some relation to the prior contributions made by Massachusetts residents to the Commonwealth. But even if the time periods were not arbitrarily selected, it would not be constitutionally permissible for Massachusetts to make a right or privilege depend

upon the mere fact that the recipient was one of Massachusetts' own people who presumptively had contributed his taxes or services to the Commonwealth. *Shapiro v. Thompson*, 394 U.S. 618, 632–633, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

Appellants also argue that the statute encourages veterans from other states to move to Massachusetts and, thus, does not have a negative impact on the right of interstate travel. The three year residency requirement, they contend, therefore, only postpones the date of eligibility and is not a penalty on the right to freely travel from one state to another. This reasoning flies in the face of the two cases that have added strength and gloss to *Shapiro*. In *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), the Court rebutted the argument that "durational residence requirements for voting neither seek to nor actually do deter such travel," *id.* at 339, 92 S.Ct. at 1001, by pointing out:

> This view represents a fundamental misunderstanding of the law. It is irrelevant whether disenfranchisement or denial of welfare is the more potent deterrent to travel. *Shapiro* did not rest upon a finding that denial of welfare actually deterred travel. Nor have other "right to travel" cases in this Court always relied on the presence of actual deterrence. In *Shapiro* we explicitly stated that the compelling-state-interest test would be triggered by "any classification which serves to penalize the exercise of that right [to travel] . . . ."

*Id.* at 339–40, 92 S.Ct. at 1001–2 (footnotes omitted). The Supreme Court in striking down Arizona's one year residency requirement for an indigent's receiving nonemergency hospitalization or medical care stated:

> Not unlike the admonition of the Bible that, "Ye shall have one manner of law, as well for the stranger as for one of your own country," Leviticus 24:22 (King James Version), the right of interstate travel must be seen as insuring the new

---

4. The case involved the question of whether past due mortgage payments came within the

ambit of Mass.Gen.Laws ch. 115 § 5, which was answered in the affirmative.

residents the same right to vital government benefits and privileges in the States to which they migrate as are enjoyed by other residents.

*Memorial Hospital v. Maricopa County,* 415 U.S. 250, 261, 94 S.Ct. 1076, 1084, 39 L.Ed.2d 306 (1974). *See also Cole v. Housing Authority of City of Newport,* 435 F.2d 807 (1st Cir. 1970) (holding unconstitutional a two year residence requirement imposed on applicants for admission to federally aided low rent, public housing projects).

Appellee here moved to Massachusetts from Vermont and, as far as the record shows, promptly went to work. Two and one-half years later, he lost his job. The lure of the Massachusetts Veterans' Services Program had obviously nothing to do with his choice of Massachusetts as his new domicile, but, even if it did, that would be irrelevant. Due to the nature of his discharge, he was completely without income. The only financial assistance for which he was eligible was denied him because he had not been a resident of the Commonwealth for three years. The reasoning and holdings of *Shapiro, Dunn,* and *Memorial Hospital* cover this case like a blanket.

Appellants advance one final argument: that the traditional equal protection test rather than the compelling state interest test should be applied. The so-called traditional test requires that the statutory classification be rationally based: economic, social, historic, and geographical factors are taken into consideration. Apparently recognizing that this approach runs squarely counter to the holdings of *Shapiro, Dunn* and *Memorial Hospital,* appellants suggest that the Supreme Court has substituted a balancing test for the compelling state interest test in assessing state statutes that restrict or penalize the right of interstate travel. The authority cited is *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). It is clear, however, that the residency requirements in *Sosna, supra,* for obtaining a divorce were viewed by the court in an entirely different light than

residency requirements that shut off the basic necessities of life, prevented voting, or curtailed hospital and medical services. The Court held:

> We therefore hold that the state interest in requiring that those who seek a divorce from its courts be genuinely attached to the State, as well as a desire to insulate divorce decrees from the likelihood of collateral attack, requires a different resolution of the constitutional issue presented than was the case in *Shapiro, supra, Dunn, supra* and *Maricopa County, supra.*

*Id.* at 409, 95 S.Ct. at 562.

The only serious justification appellants offer in support of the legislative classification is "budgetary cost";[5] a justification held in *Shapiro, supra,* 394 U.S. at 631, 89 S.Ct. 1322, and *Memorial Hospital, supra,* 415 U.S. at 263, 94 S.Ct. 1076, to be insufficient. *See also Sosna v. Iowa, supra,* 419 U.S. at 406, 95 S.Ct. 553.

Since we find no compelling state interest for the classification, it cannot stand. We hold that the portion of Mass.Gen.Laws Anno. ch. 115 § 5 which creates a durational residency requirement as a condition of eligibility for veterans' services benefits violates the equal protection clause of the fourteenth amendment to the Constitution of the United States.

*The judgment of the district court is affirmed.*

---

**5.** No facts or figures were adduced to show that any kind of a fiscal burden would be imposed on the Commonwealth if the requirement were eliminated.