George LAMBERT

v.

James W. WENTWORTH et al., Assessors of the Town of Wells.

Supreme Judicial Court of Maine.

Argued June 5, 1980.
Decided Dec. 11, 1980.

Pine Tree Legal Assistance, Inc., Martha E. Geores (orally), Augusta, for plaintiff.

Verrill & Dana, William S. Harwood (orally), Robert A. Moore, Portland, for defendants.

Before McKUSICK, C. J., WERNICK, GLASSMAN and ROBERTS, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.

George Lambert, the plaintiff–appellant, filed his complaint for declaratory and injunctive relief in the Superior Court, York County, following the denial by the Assessors of the Town of Wells of a property tax exemption to which he claims he is entitled under 36 M.R.S.A. § 653. Summary judgment in favor of the assessors-appellees was granted on their motion. The plaintiff has timely appealed. We affirm the Superior Court judgment and deny the plaintiff's appeal.

The statutory enactment involved in these proceedings (36 M.R.S.A. § 653, (1)(C), (E), (F)(1) and (F)(3) does provide for a taxation exemption up to the just value of $4,000 respecting the estates of veterans as defined in the Act

"when they shall have reached the age of 62 years or when they are receiving any form of pension or compensation from the United States Government for total disability, service–connected or nonservice–connected, as a veteran,"

provided that,

"[t]o be eligible for exemption under this subsection:

(1) [a] veteran must have been a resident of this State at the time of his entry into service; *or* have been a resident of this State for at least 10 years prior to making the claim for exemption; and

(2) ...; and

(3) [n]o exemption shall be granted to any person under this subsection unless such person is a resident of this State." (Emphasis added).

The facts are undisputed. The plaintiff purchased a house in Wells in November of 1976 and has been a resident of the Town of Wells since March 1977. He is totally disabled and a recipient of a Veterans Administration pension. He applied for a veteran's exemption respecting his property tax obligation to the Town of Wells in 1979. The assessors denied the request on the sole ground that, having enlisted in the United States Air Force in June 1964 while a resident of the Commonwealth of Massachusetts, the plaintiff had not been a resident of the State of Maine for ten (10) years as provided by 36 M.R.S.A. § 653.

The plaintiff asserts that the ten–year durational residency requirement violates his rights under the Equal Protection Clause of the Fourteenth Amendment and Article 1, Section 6–A of the Constitution of Maine, and, therefore, is void and ineffective. He further contends that, since the residency–at–time–of–entry requirement was inserted in the existing law respecting veterans' benefits by the same amendment which put in the ten–year durational residency requirement, both must fall for being so related in substance and object that it is impossible to suppose the amendment would have been enacted except as an entirety.

1. *Ten–year durational residency*

It is true that, prior to 1953, all honorably discharged veterans as defined in the Act who had reached the age of 62 years or

were receiving a pension or compensation from the United States Veterans' Administration for total disability were entitled to a property tax exemption on the single requirement that they be legal residents of the State at the time of application for the exemption. See Revised Statutes, 1944, c. 81, s. 6, subs. X. The effect of the 1953 amendment (P.L. 1953, c. 291, s. 2) is to create three classes of veterans among those veterans residing in Maine at the time of application, otherwise eligible because of age or total disability: 1) those veterans who at the time of entry in the military service were then residents of the State; 2) those veterans who, although nonresidents of Maine at the time of entry, had accumulated a ten–year residency in Maine, whether consecutive or intermittently cumulative;[1] and 3) those veterans who, although residents of the State at the time of application, were not residents of Maine at the time of induction and had not in the past resided in the State for the period of ten years.

Setting aside for the time being any consideration of the first stated class, we note that the sole differential criterion establishing entitlement to tax exemption benefits between equally qualified veterans of the other two classes is the ten–year durational residency of in–state oldtimers as it were, as compared to newcomers who claim residency in the State for lesser periods of time. The plaintiff contends that such classification impinges upon his constitutional right to travel without serving any compelling state interest, and is otherwise unrelated rationally to any legitimate governmental purpose in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and of Article I, Section 6–A of the Constitution of Maine.

It is obvious that the statutory classification disadvantages the plaintiff who claims that the legislative structure invidiously discriminates against him. But classifications are permissible under the equal protection provisions of our federal and state constitutions. Not all discrimination based on classification is a denial of equal protection. The Legislature, having been given *full power* to make and establish all reasonable laws and regulations for the benefit of the people of the State, not repugnant to the State constitution nor to that of the United States (Article IV, Part Third, Section 1, Constitution of Maine), is endowed with wide discretion in enacting legislation which treats some classes of people differently from others, on condition, however, that the classification be not arbitrary, unreasonable or irrational, in other words, that the dissimilar treatment be rationally related to the objectives of the statute. *Shapiro Bros. Shoe Co., Inc. v. Lewiston–Auburn Shoeworkers Protective Association*, Me., 320 A.2d 247, 255 (1974).

Legislation which provides governmental benefits, such as tax exemptions, to some but not to others is not necessarily violative of equal protection; but there must be some rational basis for the difference in treatment. It is not only the *fact* of discrimination but also the *manner* of discrimination between legislatively created classes that comes under the limitational curb imposed by the equal protection clause upon the legislative power to classify. See *McNicholas v. York Beach Village Corporation*, Me., 394 A.2d 264, 269 (1978).

The traditional standard by which we review an asserted violation of the Equal Protection Clause is the rational basis test, *i. e.*, the existence of a rational relation between the classification challenged and the intended goal of the legislation. *McNi-*

---

1. The statute does not specify whether the ten–year residency prior to making the claim of exemption must consist of a consecutive ten–year residence prior thereto or whether a total of ten years of residence accumulated at separate times would satisfy the stated residency requirement. The Bureau of Taxation of the State of Maine has construed the exemption statute as requiring legal residency for at least a total of 10 years prior to making the claim for exemption, but that the ten years need not necessarily be consecutive. We intimate no opinion respecting the meaning of the statute on this point. The pretrial order in the instant case did not raise such an issue.

*cholas,* supra, Id. at 268–269. See also *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). But, if a fundamental personal right is involved or the categorization discriminates against a suspect class, then the difference is constitutionally defensible only if it furthers a compelling state interest. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976).[2]

The Supreme Court of the United States has clearly indicated that the right to travel is a fundamental personal right that can be "impinged" only if to do so is necessary to promote a compelling governmental interest. *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969).

Although every durational residency requirement in itself places some burden on the exercise of the right to travel, not every such requirement constitutes that direct and substantial "impingement" on the right to travel necessary to bring the claimed violation within the scope of the constitutional prohibition so as to trigger the application of the strict scrutiny test. Where the individual interest affected does not involve a fundamental right and the residency requirement is not a real impediment to interstate travel, then the governmental purpose sought to be gained by the imposition of the residency requirement may be justified under the traditional rational–relation test and need not be so vindicated. by the showing of a compelling state interest. See *Town of Milton v. Civil Service Commission,* 365 Mass. 368, 312 N.E.2d 188, 191 (1974).

We do recognize that the veteran's right to a tax exemption preference does not in and of itself involve a fundamental right, such as the right to the basic necessities of life, like food, shelter, health care, etc. It is obvious, however, that the reference statute, in making veterans' tax exemptions depend on a ten–year residency in the State, has a substantial penalizing effect on those veterans who have recently exercised their right to travel by denying them benefits while granting the same to others whose sole distinctive qualification for eligibility to take advantage of such state benefits is the longevity of their residence in the State. In *Cole v. Housing Authority of City of Newport,* 435 F.2d 807 (1970), the Circuit Court of Appeals, First Circuit, held the two–year residency requirement adopted by the defendant Housing Authority to establish eligibility for admission to public housing so penalized the right to travel that its justification could be successfully defended only by demonstrating that the requirement furthers a compelling state interest. Id. at 811.

The reason offered in support of the instant residency requirement is that a veteran's residence in Maine for a period of ten years establishes an equivalency standard for consideration of the veteran as a son or daughter of Maine, to the same degree as residency at the time of entry into the service is recognized for the purpose of rewarding the State's military personnel for their patriotism in serving in the armed forces of the United States. Such an artificial conceptualization is more fanciful than real. It is not realistic to believe the Legislature had the above stated equation in mind when it enacted the veterans' tax exemption statute, fully aware, as we must presume, that veterans born in Maine, the true sons and daughters of the State, were being excluded from the State's bounty if they were not residents of the State at the time of induction or had not been residents of Maine for ten years prior to making the claim of exemption.

---

2. The right to vote is such a fundamental right which calls for the application of the strict scrutiny test to classifications based thereon. *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). Also rights guaranteed by the First Amendment. *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). Classifications operating to the disadvantage of a suspect class include such as discriminatorily affect people because of their race or ancestry or for like concerns. *McLaughlin v. Florida,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); *Oyama v. California,* 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948).

As a matter of historical fact, the legislative purpose surfaces as based on other considerations. When the amendment was reported to the House of Representatives with the unanimous recommendation that it ought to pass, Mr. Low, chairman of the Committee on Taxation, addressed the House and commented in pertinent part as follows:

"I would like to say just a few words about this new draft, which is a sincere effort to do the fair thing by both the towns and the veterans. It has three major objectives and three substantial changes altogether from the old bill.

"In the first place,

. . . . .

"In the second place, there is a requirement that a veteran should either have been a resident of the State of Maine at the time he enlisted or should reside for at least ten years in the State before he can claim the exemption. *This clause will stop people coming into the State, who have never lived here before, and claiming the exemption.*

"In the third place, if the exemption in any town exceeds three per cent of the total levy, then the State will pay seventy per cent of the excess. That will prevent any town such as Chelsea, who has lost twelve per cent of their property, from being unduly penalized." (Emphasis provided) Legislative Record, Vol. 1, Ninety–Sixth Legislature, 1953, p. 1044.

From the above legislative comment, it clearly appears that the overriding purpose of the amendment was to protect the towns against what was perceived to be an unreasonable surrender of the taxation process and its severe impact on the fiscal policies of certain towns. The ten–year residency requirement, although originally stated to be a means of discouraging outsiders from moving into the State, when viewed in the light most favorable to the veteran and the municipality, could be appraised, as a reasonable device for rewarding the patriotism of the State's veterans without excessive impact on the towns' taxing power, by limiting the exemption to veterans who allegedly have a higher claim to the State's bounty by reason of their longer term of residence in the State. But, as pointed out in *Cole v. Housing Authority of City of Newport,* supra, at 813, such preferences given to longer term residents either on the basis of past tax contributions or merely as a sentimental value judgment are constitutionally impermissible and unjustified under the applicable strict scrutiny test. The objective of protecting the municipal fisc by discriminatory means or promoting provincial prejudices in favor of long–time residents is the very thing that the Equal Protection Clause was intended to proscribe. See also *Shapiro v. Thompson,* supra, 394 U.S. at 632–633, 89 S.Ct. at 1322, 1330. Similarly, in *Strong v. Collatos,* 593 F.2d 420 (1979), the First Circuit Court of Appeals ruled unconstitutional as in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States the provision of a Massachusetts statute requiring a durational residency in the Commonwealth of at least three years as a condition of eligibility for veterans' welfare benefits.[3]

---

**3.** Three judge federal courts have reached similar results. In *Stevens v. Campbell,* D.C.D. Mass., 332 F.Supp. 102 (1971), the Court struck down as violative of the Equal Protection Clause that portion of a Massachusetts statute which denied to an otherwise qualified veteran a preference in opportunity for permanent employment in classified civil service of the Commonwealth if the veteran did not have a five-year consecutive residence in the Commonwealth next prior to the date the preference as a veteran was claimed. See also *Massey v. Apollonio,* D.C.D.Me., 387 F.Supp. 373 (1974) (durational residency requirement in connection with lobster fishing licenses); *Barnes v.*

*Board of Trustees, Michigan Veterans Trust Fund,* D.C.W.D.Mich., 369 F.Supp. 1327 (1973) (five year durational residency requirement to qualify for aid from the Veterans Trust Fund).

On the other hand, a seven year residency requirement for candidates for the Office of Governor was seen as the approximate outer limit of constitutional authorization. *Chimento v. Stark,* D.C.D.N.H., 353 F.Supp. 1211 (1973); see also *Antonio v. Kirkpatrick,* 8th Cir., 579 F.2d 1147 (1978), where a ten-year durational residency for candidates for State Auditor was declared unconstitutional.

As we stated in *State v. Knowles*, Me., 371 A.2d 624 (1977), we should adhere to our policy of deference to First Circuit decisions in order to promote harmonious federal–state relationships on a federal constitutional question, especially in the instant case where the history of the reference legislation definitely indicates that the ten–year residency requirement to qualify for a veteran's tax exemption was enacted to prevent those veterans who exercised their constitutional right of travel only recently from claiming the gratuity, while permitting long–term residents to receive the benefit. We are convinced that this portion of the amendment in requiring a ten–year durational residency to qualify for a tax exemption places a direct and real impediment upon veterans' constitutional right to travel and penalizes invidiously the exercise of such right. It cannot be justified under the strict test of showing a compelling state interest to be achieved by the classification. Nor do we see constitutional validity, even if the standard of rational relationship were applied.

### 2. *Residency at time of induction*

The plaintiff was not a resident of Maine when he entered the military service of the United States in June of 1964. If that residency requirement is constitutionally valid, then the plaintiff has no legal right to receive a tax exemption and the decision below was correct.

The legitimacy of the governmental interest in veterans' preference legislation is beyond serious judicial dispute. Historically veterans' preference laws have been directed to three principal objectives: (1) to recognize that the experience, discipline, and loyalty that veterans gain in military service are conducive to the better performance of public duties; (2) to encourage citizens to serve their country in time of war and to reward those who, either involuntarily or through enlistment, did so; and (3) to aid in the rehabilitation and location of the veteran whose normal life style has been disrupted by military service. *Rios v. Dillman*, 5th Cir., 499 F.2d 329, 332 (1974).

As stated in *Rios v. Dillman*, the Equal Protection Clause is not an automatic leveler, nor does it reduce legislative bodies to classificatory impotence. It allows statutory distinctions; and so long as a classification does not turn on suspect criteria (such as durational residency requirements), it requires only a rational justification for the decision to classify. Id. at 335. Residency in the State at the time of entry into military service, as required by 36 M.R.S.A. § 653 for entitlement to tax exemption benefits, is a proper distinguishing factor upon which to base veterans' preferences in rewarding the State's citizens for their patriotism in time of war. The legislative decision to limit the State's grant of tax exemption to those veterans who entered the service while citizens of Maine as a means of encouraging military service in times of war and rewarding such service cannot be considered as arbitrary or capricious, but must be viewed as expressing the State's gratitude to that class of veterans most worthy of its bounty because of their citizenship status at the time they disrupted their economic lifestyle in answering the call to patriotic duty. Providing preferential treatment in tax exemption to the class of veterans who were legal residents of Maine at the time of their entry into military service in time of war bears a rational relationship to the State's legitimate interest in rewarding those who made up the State's share in the war effort. Such restriction cannot realistically be held to infringe upon or penalize the right to travel. *August v. Bronstein*, D.C.S.D.N.Y., 369 F.Supp. 190 (1974); *Langston v. Levitt*, D.C.S.D.N.Y., 425 F.Supp. 642 (1977).

### 3. *Severability*

The plaintiff contends, however, that, since the 1953 amendment carried both alternative residency requirements, *i. e.*, residency in the State at the time of induction or a prior ten–year durational residency in the State at the time of application for the tax exemption, the constitutional invalidity of the one segment thereof nullifies the whole amendment. Initially, we note that

the amendment also included for the first time the provision that

"[c]ities and towns granting such exemptions shall have a valid claim against the state to recover 70% of the taxes lost by reason of this exemption as exceeds 3% of the total tax levy,[4]
. . . . ."

See P.L. 1953, c. 291. Thus, it is obvious that the overriding intent of the Legislators at the 1953 session was to relieve cities and towns from the increasing loss of taxable property caused by the veterans' tax exemptions. This, they sought to accomplish in two ways, 1) by restricting eligibility to receive the tax benefits, and 2) by having the State reimburse the cities and towns in a proportionate amount of their loss of taxable property.

■ We notice also that in 1953 the statutes of the State did not carry the present legislative rules of construction provided by 1 M.R.S.A. § 71(8) relating to severability of statutes.[5] Whether the 1959 statutory construction provision controls the construction of legislation passed in 1953, we need not decide. Viewing the absence of a general statutory act regulating the construction of statutes respecting severability in the same light as the absence of a specific severability provision in the particular legislation being construed, we hold that the partial unconstitutionality of the instant statute does not necessarily result in tainting the whole legislation, even though the legislation at issue does not carry a severability clause; and where it appears that the valid provisions would have been enacted without the invalid portion, then the valid part may stand and the

invalid segment may be rejected. *Town of Windham v. LaPointe*, Me., 308 A.2d 286, 292 (1973). Such may be presumed to be the case, if, as in our present problem, the unconstitutional and invalid portion of the veterans' tax exemption law is separable from and independent of the rest of the statute which is valid. The illegal will be deleted, while the legal will be retained. *Hamilton v. Portland Pier Site District*, 120 Me. 15, 24, 112 A. 836 (1921).

■ When read in its entirety and considered in its historical legislative background indicated by the statement of the chairman of the Committee on Taxation referred to previously, the 1953 amendment to the preexisting veterans' tax exemption benefit law clearly demonstrates that the primary purpose of the amendatory legislation was to lighten the impact of the ever—increasing number of veterans' property exemptions upon the property tax structure of the respective towns and cities of the State. The residency requirement at the time of induction into the service has a rational bearing upon the intended goal of reducing the amount of veterans' tax exemption claims and is not essentially and inseparably connected with, nor dependent upon, the alternative requirement of ten—years of residence in the State at the time of application for the claim.

Under such circumstances, we see no reason to doubt that, in order to reach its intended objective of reducing the number of veterans' tax exemption claims, the Legislature would have enacted the amendment with the sole residency requirement of being a resident of Maine at the time of entry into the service, if the Legislators had been made aware of the invalidity of the ten—year durational residency requirement. See

---

4. This percentage of reimbursement has been increased to 90%. P.L. 1963, c. 397.

5. 1 M.R.S.A. § 71 *Laws*.
   The following rules shall be observed in the construction of statutes, unless such construction is inconsistent with the plain meaning of the enactment.
   8. *Severability*. The provisions of the statutes are severable. The provisions of any session law are severable. If any provision of the statutes or of a session law is invalid, or if the application of either to any person or circumstance is invalid, such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application. P.L. 1959, c. 363, § 4.

*Barnes v. Board of Trustees, etc.,* 369 F.Supp. 1327 (D.C.W.D.Mich. 1973).

The elimination only of the ten–year residency provision leaves the statute operable and at the same time permits the Legislature's manifest purpose of limiting the number of veterans' tax exemption claims to be accomplished.

In conclusion, we hold that the plaintiff has failed to meet the burden thrust upon him in his attack upon the constitutionality of the reference legislative enactment in all its aspects. It is not the duty of this Court to sit in judgment as to the wisdom of the statute. *Shapiro Bros. Shoe Co., Inc. v. Lewiston–Auburn Shoeworkers Protective Ass'n,* Me., 320 A.2d 247, 257 (1974); *Green Acre Baha'i Institute v. Town of Eliot,* 159 Me. 395, 404, 193 A.2d 564, 568 (1963); *Baxter v. Waterville Sewerage District,* 146 Me. 211, 214, 79 A.2d 585, 587 (1951).

The entry will be:

Judgment for the defendants without costs to either party affirmed.

The parties are to bear their own costs on appeal.

All concurring.