1999 ME 153

**HEFFLEFINGER, INC. d/b/a Thrifty of Portland et al.**

v.

**CITY OF PORTLAND.**

Supreme Judicial Court of Maine.

Argued Oct. 5, 1999.
Decided Oct. 27, 1999.

David A. Lourie (orally), Cape Elizabeth, for plaintiff.

William J. Kayatta, (orally), Michael S. Wilson, Pierce Atwood, Portland, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] This appeal arises from a summary judgment entered in the Superior Court (Cumberland County, *Mills, J.*) in favor of the City of Portland. Hefflefinger, Inc. and Alamo Rent–A–Car, Inc. (rental agencies) assert that the court erred when it determined (1) that the fees Portland charged to off-airport car rental businesses complied with the Revenue Producing Municipal Facilities Act, 30–A M.R.S.A. § 5405 (1996) and (2) that the rental agencies did not unjustly enrich the City when they paid the charges. We disagree and affirm the judgment.

[¶ 2] The Portland City Council enacted an ordinance pursuant to 30–A M.R.S.A. § 5405 that required off-airport car rental companies picking up passengers at Portland International Jetport to pay four to six percent of their gross revenues from airport-derived business.[1] The ordinance

1. Section 18–82 of the Portland City Code was passed on February 6, 1995, and reads in pertinent part:

   **Off-airport motor vehicle rental business operating on the Portland International Jetport.**

   (a) **Purpose.** This section is enacted for the purpose of reasonably regulating the business use of public airport facilities by private motor vehicle rental companies which are located off airport property; preserving good order and peace at the airport; providing for the public health, safety and welfare; helping to defray the costs of constructing, operating, maintaining, and improving the public airport facilities through the imposition of reasonable user fees; and regulating the use of public facilities in furtherance of private commercial activities....

   (c) **Permit required.** No person engaging in an off-airport motor vehicle rental business shall operate at, enter upon or use airport property for the purpose of providing pickup or drop off service for airport customers except under an executed written contract with the city specifically permitting the operation of such services at the airport. Without limiting the authority granted elsewhere in this article, the director of waterfront and transportation facilities is authorized to enter into off-airport business permit agreements which authorize such permittees to conduct certain business operations on airport property in exchange for the payment of a reasonable user fee. Said agreements shall provide for the payment of annual user fees based upon a percentage of the gross revenues from its airport customers, as follows:

   1. Effective July 1, 1995 through June 30, 1998 ...
   a. 0 % on the first $200,000 in gross revenues; and
   b. 4 % on the gross revenues above $200,000.
   2. Effective July 1, 1998 ...
   a. 0 % on the first $200,000 in gross revenues; and
   b. 6 % on the gross revenues above $200,000.

   § 18–82 Portland City Code (1995).
   Section 5405 of 30–A M.R.S.A. provides:

   1. **General.** The municipal officers shall fix the schedule of rates, fees and other charges for the use of, and for the services furnished or to be furnished by any revenue-producing municipal facility. The municipal officers may revise this schedule of rates, fees and charges from time to time. These rates, fees and charges, except rates, fees and charges for water system purposes, are not subject to supervision or regulation by any other commission, board, bureau or agency of the municipality or of the State. The municipality shall charge and collect the rates, fees and charges so fixed or revised. Except as otherwise provided, these rates, fees and charges, including, in the case of parking facility rates, fees and charges for parking on the public ways or in the public parking areas included in the parking system designated by the municipal officers of which the parking facility is a part, shall be fixed

required Thrifty and Alamo to contract with the City to pay these charges before they could use the airport to pick up their customers. Both Alamo and Thrifty agreed to pay the charges. The companies, however, signed these agreements under protest.

[¶ 3] Prior to the passage of the ordinance, the City did not charge off-airport rental car companies when they picked up customers at the airport. Thrifty conducted its car rental business from 1970 to January 1998 at a location in close proximity to the airport, but not on airport property.[2] Alamo continues to conduct its car rental business from off-airport property. Four car rental companies operate on-airport concessions. These companies have counter-space within the airport terminal and pay the City rent plus ten percent of their gross revenues.[3] These companies also rent parking spaces from the city for their cars. The City derives twenty percent of its total annual airport revenue from the on-airport car rental concessions. The City is obligated, pursuant to federal law, to "maintain a fee and rental structure for the facilities and services at the airport which will make the airport as self-sustaining as possible...." 49 U.S.C. § 47107(a)(13)(1997).

[¶ 4] The City does not charge uniform fees to any of the companies that provide ground transportation. The City does, however, charge other courtesy shuttles, such as those run by off-airport parking facilities and hotels, a $300 operator fee per year per company and a $10 per vehicle decal fee.[4] These courtesy shuttles pick up their customers at the same location as Thrifty and Alamo. Non-reserved taxis and limousines are charged a $10 decal fee and a $480 operator fee per vehicle, but reserved taxis and limousines are only charged the $10 decal fee.

[¶ 5] Alamo and Thrifty derive a majority of their business from airline passengers. Many passengers arrange for airport pickup by Thrifty and Alamo through their national reservations system. Thrifty and Alamo also advertised within the airport and were permitted to allow their customers to use courtesy phones to call from the airport for pick up.

[¶ 6] Thrifty and Alamo sought a declaratory judgment asserting that the charge was an illegal tax; that the charge violated 30–A M.R.S.A. § 5405; and that they were entitled to recover for the fees that they already paid to the City. The trial court determined that the rates charged by the City were statutorily permitted and "reasonably related" to the rental agencies' use of the airport because the airport authority creates a "marketplace" for the rental agencies' businesses, and thus held that the City was not unjustly enriched and the rental agencies were not entitled to a reim-

and revised to provide funds which, together with all other funds available for the purpose, will be sufficient at all times to pay the cost of maintaining, repairing and operating the revenue-producing municipal facility and parking system, including reserves for those purposes, and to pay the principal of and interest on the revenue bonds, as the same becomes due and payable, and reserves for that purpose. The rates, fees and charges must be reasonable, just and equitable....
**4. Airport rates.** In the case of an airport or part of an airport, the rates, fees and charges may be based or computed upon square footage, gross receipts, landings or other basis which is reasonably related to the use of or service furnished by the revenue-producing facility.

30–A M.R.S.A. § 5405 (1996).

**2.** Thrifty remained in the appeal to reclaim fees it has already paid to the City.

**3.** The companies are Hertz, Avis, National, and Budget. They pay $26.50 per square foot per year to rent terminal space, $0.29 per square foot per year for service facilities, and $20 per space per month for parking facilities. Each company had a twenty year contract with the City. Those contracts expired on July 1, 1998 and at that time a competitive bidding process opened for all rental car companies to participate.

**4.** The off-airport rental companies are charged these same fees for their shuttles, but these fees are credited toward their user fees.

bursement of the fees they have paid in excess of other shuttle operators.

[¶ 7] We review the grant of a summary judgment for errors of law and independently examine the record to determine if a genuine issue of material fact exists. *See Nevin v. Union Trust Co.,* 1999 ME 47, ¶ 5, 726 A.2d 694, 696. We view the evidence in "a light most favorable to the party against whom the judgment has been granted." *Id.* We will affirm the grant of a summary judgment if the evidence manifests that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *See Landry v. Leonard,* 1998 ME 241, ¶ 4, 720 A.2d 907, 908.

[¶ 8] We do not need to determine whether the charge is a user fee or a tax. A municipality may impose a user fee without specific authorization from the legislature. *See Butler v. Supreme Judicial Court,* 611 A.2d 987, 990 (Me.1992) (affirming imposition of jury fee because charge constituted a user fee and not an unauthorized tax). Although a municipality does not have the power to tax without specific authorization, the legislature specifically authorized the City to collect this charge pursuant to 30–A M.R.S.A. § 5405(1) and (4). *See City of Auburn v. Paul,* 110 Me. 192, 85 A. 571, 575 (1912) (stating that when legislature delegates power to tax to municipalities, such power must be clear and unambiguous and will be strictly construed).

[¶ 9] Section 5405 authorizes municipalities to "fix the schedule of rates, fees and other charges for the use of, and for the services furnished or to be furnished by any revenue-producing municipal facility." 30–A M.R.S.A. § 5405(1). The statute requires the municipality to calculate the rates, fees and charges at a rate that "will be sufficient at all times to pay the cost of maintaining, repairing and operating the revenue producing facility." 30–A M.R.S.A. § 5405(1). The fees must be reasonable, just and equitable. *See* 30–A M.R.S.A. § 5405(1). The statute further allows the rates, fees and charges for airport rates to be based upon "square footage, gross receipts, landings or other basis which is reasonably related to the use of or service furnished" by the municipal airport. 30–A M.R.S.A. § 5405(4).

[¶ 10] The statute authorizes the City's ordinance because the City owns and operates Portland International Jetport and the airport is a revenue producing municipal facility. *See* 30–A M.R.S.A. § 5405(1). The City was authorized to charge Alamo and Thrifty for their use of the airport and for the services the City provided them because the statute does not limit its application to on-airport concessions. 30–A M.R.S.A. § 5405(1). The City did not have to limit its fee to the actual cost of using the airport because the statute allows the City to charge for any use or service provided and for the cost of maintaining and operating the airport. 30–A M.R.S.A. § 5405(1).

[¶ 11] Thrifty and Alamo argue that the charge is unjust, unreasonable and inequitable because the City does not charge all courtesy vans the same rate. The rate of six percent of gross revenues after the first $200,000 of airport-derived revenue is reasonable because the statute does not limit the City to charging only the costs it bears from another's use, but rather requires the city to charge sufficient rates to include the cost of maintaining, repairing, and operating the entire revenue producing facility. *See* 30–A M.R.S.A. § 5405(1); *Alamo Rent–A–Car v. Sarasota–Manatee Airport Auth.,* 906 F.2d 516, 522 (11th Cir.1990) (stating that it was appropriate for the airport authority to calculate maintenance and development costs in user fees for off-airport companies). Thus, even though the rental agencies assert that they impose a minimal burden on the City when they drive through the airport picking up customers, the City may charge them for the use of the airport and its roadways and for the maintenance of the entire airport because the charges are authorized by the

statute and the rental agencies benefit from the entire airport. *See* 30–A M.R.S.A. § 5405(1).

[¶ 12] The rental agencies rely on an equal protection case, *McNicholas v. York Beach Village Corp.*, 394 A.2d 264 (Me.1978), for their assertion that the fee is unreasonable because it treats users of the airport differently and would not survive a rational basis analysis. In *McNicholas*, we invalidated a city ordinance that charged divers a user fee but did not charge any other park users, because there was no rational basis for the distinction between the divers and other park users. *McNicholas*, 394 A.2d at 270. We stated that requiring one group "to pay more than another group for the same privilege" would be permissible if the distinction was reasonably related to a government interest. *McNicholas*, 394 A.2d at 269.

[¶ 13] The differentiation between shuttle buses here is reasonably related to a government interest. When the City imposed the charge, the City enumerated its legitimate government purpose to preserve "order and peace at the airport" while "providing for the public health, safety and welfare" and defraying the costs of "constructing, operating, maintaining, and improving the public airport facilities." Portland City Code, 18–82(a). Thus, the charge is reasonable because it is rationally related to the government purpose of maintaining and operating the airport. *See Alamo Rent–A–Car v. Sarasota–Manatee Airport Auth.*, 825 F.2d 367, 372 (1987) [hereinafter *Sarasota I* ] (finding that differing fee schedule between off-airport car rental companies and hotel courtesy vans was rationally related to government's objective of maintaining airport facility and public health, safety and welfare).

[¶ 14] The City acted in a just, reasonable and equitable manner when it distinguished its charges based on the benefit received by each user because the operators of the courtesy shuttles benefit differently from the airport. *See United States*

*v. Sperry Corp.*, 493 U.S. 52, 66, 110 S.Ct. 387, 397, 107 L.Ed.2d 290 (1989) (opining that distinguishing the amount of the user fee according to the benefit received is sensible); *Sarasota I*, 825 F.2d at 370–71 (reasoning that distinction between charging off-airport car rental companies a 10% user fee and charging hotel courtesy vans a flat fee was rationally based on the differences in their businesses and benefits each receives from the airport); *Allright Colorado, Inc. v. City and County of Denver*, 937 F.2d 1502, 1513 (10th Cir.1991) (reaching same conclusion as *Sarasota I* ); *Toye Bros., Yellow Cab Co. v. Irby*, 437 F.2d 806 (5th Cir.1971) (ruling that 10% of gross receipts of common carrier limousine and bus service was fair compensation for use of airport facilities even though motel courtesy cars and local transit system transports were only charged a flat fee); *Jacksonville Port Auth. v. Alamo Rent–A–Car, Inc.*, 600 So.2d 1159, 1165 (Fla.Dist. Ct.App.1992) (finding that off-airport user fees were reasonable because even though the fees did not assimilate to flat fees charged to other courtesy vans, the varying fees reflected the relative benefits each operator received from the airport). Thus, the ordinance does not violate section 5405 because the charges are just, reasonable, and equitable.

[¶ 15] Finally, the Superior Court properly determined that the City was not unjustly enriched. *See Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1145 (Me.1994) (stating that a party may recover against a municipality for unjust enrichment, but recovery is only appropriate when fairness and justice require the payment). The circumstances of this case do not require reimbursement because the City had statutory authority to collect the user fee and, therefore, did not violate principles of justice or fairness.

The entry is:

Judgment affirmed.